IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:19-cr-31 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | **ORDER DENYING DEFENDANT'S** |
| | : | **MOTIONS TO SUPPRESS EVIDENCE** |
| OSCAR TORBERT, | : | |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's Motion to Suppress Fruits of Search Warrant (Doc. 40) and Amended Motion to Suppress Fruits of Search Warrant (Doc. 47). The United States opposes these motions (Docs. 42, 49). In addition, the Court previously concluded that Defendant had made the preliminary showing entitling him to an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). (Doc. 51.) The Court conducted the hearing on February 1, 2021.

A grand jury indicted Defendant Oscar Torbert on charges of possession of fentanyl with intent to distribute, possession of a firearm by a convicted felon, possession of firearms in furtherance of a drug trafficking crime, and using premises for drug preparation. (Doc. 31.) All of these charges stem from drugs, drug preparation materials, and firearms obtained from 2504 Kipling Avenue in Cincinnati, Ohio. Torbert contends that the search warrant authorizing the search of the Kipling Avenue address lacked probable cause so the fruits of that search must be suppressed. For the reasons that follow, Defendant's motions will be **DENIED**.

## I.      BACKGROUND

In January 2018, state and federal drug task force officers began investigating Oscar Torbert for alleged narcotics sales. On March 13, 2019, officers executed a search warrant at

1

Torbert's residence, 2504 Kipling Avenue. The pending motions seek to suppress the evidence discovered in executing the search warrant.

### A. Search Warrant Affidavit

The affidavit underlying the search warrant states:

> During the course of this investigation members of Law Enforcement met with a confidential and reliable informant, hereafter referred to as CI, that was able to provide detailed information about TORBERT and his narcotics trafficking operation. The CI has provided information to law enforcement in the past which was proven true and accurate through independent investigation. The information has also resulted in the successful recovery of narcotics and assets by law enforcement. Further, within the last month, the CI has observed TORBERT enter apartment #2 at 2504 Kipling Avenue. In the last month, members of Law Enforcement have observed TORBERT enter and exit the main entry door of 2504 Kipling Avenue multiple times and on one occasion observed TORBERT enter apartment #2.

> On March 10, 2019, Agent Fields observed TORBERT exit 2504 Kipling Avenue. Agent Keller observed TORBERT meet very briefly with the occupant of a Gray Honda Crosstour at 2516 Kipling Avenue and then immediately return to 2504 Kipling Avenue. It is known to the Affiant that narcotics traffickers frequently meet with customers for narcotics sales in or near their vehicles for very brief times. This is done to minimize exposure to observation of law enforcement. Based upon the Affiant's training and experience it is known that this aforementioned conduct is consistent with hand to hand drug sales. Based on the previously described observations by members of Law Enforcement, it is the belief of the Affiant that TORBERT is using 2504 Kipling Avenue apartment #2 as a storage location for his narcotics.

> On March 13, 2019, at approximately 3:00 P.M., members of Law Enforcement observed TORBERT exit 2504 Kipling Avenue and enter a 2013 Silver Honda Accord bearing Ohio license HJK4159. At approximately 3:36 P.M. plain clothes officers observed the Silver Honda being operated on Glen Este Avenue and then turning south into the 3600 block of Vine Street. This area of Avondale is known to the Affiant as a common area that narcotics traffickers meet customers to conduct drug transactions. A uniform Ohio Highway State Patrol was requested for a traffic stop. The stop was conducted in the Richie's parking lot at 3635

2

Vine Street.  TORBERT was located in the rear seat of the vehicle. TORBERT had an active Felony warrant for Drug Possession, case #B1804615, TORBERT was arrested and officers located a small bag of Fentanyl on the seat where TORBERT was sitting and he admitted it was his.  TORBERT was taken to the Hamilton County Justice Center for his open warrant and a new charge of Drug Possession.

In conclusion, it is the belief of the affiant that Oscar Torbert is conducting an ongoing drug trafficking operation and is utilizing 2504 Kipling Avenue apartment #2 as a storage location for the narcotics.  It is known to the affiant that narcotics traffickers frequently utilize residences to which they have access to [sic] in their narcotics trafficking.  Members of Law Enforcement have observed TORBERT enter and exit the residence to further his narcotics trafficking operation.

(Affidavit, Doc. 42-1 at PageID 145.)

Based on the affidavit, a Hamilton County Municipal Judge authorized the search of Torbert's residence—2504 Kipling Avenue, Apartment 2—as well as locked and unlocked storage areas in the building and detached garage.  The search of Torbert's apartment yielded drug ledgers, drug preparation materials (including gloves, a blender, scales, a vacuum sealer and bags), a gram of fentanyl, marijuana and multiple cell phones.  Officers used a key from Torbert's key chain to unlock a closet numbered "1" in a basement storage area.  Inside the locked storage closet, officers found three firearms (two of which were loaded) and presses containing suspected fentanyl residue.  Officers also located nearly 1,000 grams of fentanyl behind a stove in the basement common area.

## B.  Motion for *Franks* Hearing

Torbert previously moved for a *Franks* hearing alleging that officers intentionally omitted material information from the search warrant affidavit to give a false impression that the fentanyl Torbert possessed at the traffic stop originated from his Kipling Avenue residence. Specifically, Torbert stated that after he left his apartment in the silver Accord but before the

3

traffic stop discussed in the affidavit, he stopped at a building on Glen Este Place.  Torbert offered affidavits from two others corroborating that the intervening stop occurred.  Over the United States' objection, the Court granted Torbert's request for a *Franks*[1] hearing.

### C.  Evidence Adduced at the *Franks* Hearing

At the *Franks* hearing, Christopher Smith testified that he drove the silver Accord on the day in question.  He confirmed that he, Torbert, and one other person drove together from Kipling Avenue to Glen Este Place.  He and the other person waited in the car while Torbert entered the Glen Este Place apartment building for approximately 20 minutes.  Once Torbert returned to the car, they drove up Glen Este Place, turned onto Vine Street, and were almost immediately stopped by police.

Similarly, Gregory Sandford testified that he lives on Glen Este Place, and Torbert stopped at his residence during the afternoon of March 13, 2019.  He believed that Torbert stayed approximately 20 to 30 minutes.  However, both Smith and Sandford noted the length of time that had passed between the March 13, 2019 visit and their February 1, 2021 testimony.  Both further testified that they were estimating the length of the visit.

Drug Enforcement Agency ("DEA") Special Agent Tyler Field testified that he participated in the investigation of Defendant Oscar Torbert along with another DEA agent and District Four Cincinnati Police Department ("CPD") officers.  He testified that he observed Torbert's activities outside the Kipling Avenue apartment from a pole camera installed on January 22, 2019 across the street from Torbert's residence.  The pole camera had swivel and zoom capabilities, and the zoom feature enabled those monitoring the camera feed to identify faces and license plates.  Although the live camera feed was not monitored 24 hours a day, the pole camera recorded constantly, and Field routinely monitored the live feed from his computer

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

while he engaged in other tasks. Field further testified that officers observed Torbert meet briefly in or near cars in front of the Kipling Avenue address two additional times, but the affidavit did not include those two additional meetings.

Regarding other investigatory efforts to link Torbert's residence with drug activity, Field testified that CPD officers made a controlled buy from Torbert in 2018 and conducted a trash pull at Kipling Avenue in early 2019. However, the trash pull did not yield evidence of drug-related activity. Field further testified that the search warrant affidavit referred to only one CI in this investigation, but there were many others involved.

Unbeknownst to Torbert, task force officers employed Global Positioning System ("GPS") monitoring on his cell phone. Field testified that every 15 minutes he received a "ping" providing geo-location information for Torbert's cell phone (and presumably Torbert). No officers conducted live surveillance of Torbert on March 13, 2019. Rather, the GPS monitoring system produced one ping on Ronald Reagan Highway, one ping on Glen Este Place, and then pinged on Vine Street, the site of the traffic stop. Thus, Field did not know Torbert had stopped on Glen Este Place.

Finally, CPD Sergeant Scott Brians testified that he was a detective in the Violent Crime Squad during the investigation in question. According to Brians, he and other officers routinely monitor high crime areas looking for vehicles with heavily tinted windows that travel in specific alleys and streets known for drug trafficking. If they observe a potential traffic violation or illegal level of window tint, officers request a traffic stop.

On March 13, 2019, Brians requested a stop of the silver Accord, not knowing that Torbert—the subject of an ongoing drug trafficking investigation—was in the back seat. During the traffic stop, law enforcement officers arrested Torbert on an active felony warrant for drug

5

possession.  During the arrest, officers located a small bag of fentanyl on the seat where Torbert had been sitting, and he admitted it belonged to him.

Brians testified that no one on his team saw the silver Accord stop on Glen Este Place. Once he initiated the traffic stop, Brians learned that Torbert was in the car and was being arrested on the open warrant and for fentanyl possession.  Brians contacted Field and other task force members to alert them to Torbert's arrest.  They decided to seek a warrant to search Torbert's Kipling Avenue residence while Torbert was under arrest and would not be present at the residence.  Brians drafted the search warrant affidavit with the knowledge he possessed at the time.  Brians testified that he did not know Torbert's Kipling Avenue residence was being surveilled via pole camera until March 13, 2019.  He then submitted the search warrant request and affidavit to an attorney to review before presenting it to a Hamilton County Municipal Judge for approval.

### D.  Procedural Posture

Torbert now seeks to suppress the evidence found in executing the search warrant.  He alleges that the affidavit underlying the search warrant lacks probable cause because the fentanyl he possessed on arrest miles from his residence fails to provide the nexus required to search his residence and associated storage areas.  He further contends that officers intentionally or recklessly failed to include the intervening stop on Glen Este Place in an effort to link the fentanyl Torbert possessed at the traffic stop with the Kipling Avenue address.

### II.  *FRANKS* HEARING

To prevail in a *Franks* hearing, a defendant must establish that an affiant "knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit" and "the false statement or material omission is necessary to the

6

probable cause finding in the affidavit." *United States v. Young*, 847 F.3d 328, 348–49 (6th Cir. 2017) (quoting *United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir. 2015)).  As recently explained:

> A law enforcement officer's statement is only considered to be issued with "reckless disregard for the truth" if a defendant shows that the affiant subjectively "entertain[ed] serious doubts as to the truth of his [or her] allegations." *Cican*, 63 F. App'x at 836 (quoting *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001)). "Allegations of [an agent's] negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171, 98 S.Ct. 2674. "Only after the defendant makes this showing may the court consider the veracity of the statements in the affidavit or the potential effect of any omitted information." *United States v. Archibald*, 685 F.3d 553, 558–59 (6th Cir. 2012).

*United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (alterations in original).

In the case at bar, Torbert alleged that law enforcement officers deliberately omitted from the affidavit the fact that he stopped at a residence on Glen Este Place—a known drug trafficking area—between leaving his Kipling Avenue residence and possessing fentanyl at the traffic stop. He submitted evidence from two witnesses who substantiated this intervening stop.  On that basis, the Court granted his request for a *Franks* hearing.

However, evidence adduced at the *Franks* hearing demonstrated unequivocally that officers did not know about the intervening stop on Glen Este Place.  Although the Court assumed from reading the affidavit that officers personally surveilled Torbert on the day in question, the undisputed testimony indicated that officers observed Torbert via pole cameras rather than by personal surveillance.  In addition, his whereabouts after he left the Kipling Avenue address were monitored not by trailing law enforcement officers but by pings from geo-location monitoring every fifteen minutes.  Field testified very credibly that the geo-location monitoring produced only one ping on Glen Este Place.  Field's testimony is not significantly

inconsistent with defense witnesses' estimation more than a year later that Torbert remained at the Glen Este address for approximately twenty minutes.  Thus, the evidence adduced at the hearing establishes that the affiant omitted Torbert's intervening stop because neither he nor the DEA agents with whom he communicated in preparing the affidavit knew it had occurred. Accordingly, *Franks* and its progeny do not apply here.

## III.    PROBABLE CAUSE

Having determined that *Franks* does not apply here, the Court must determine whether the search of the Kipling Avenue address otherwise passes constitutional muster.  Pursuant to the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  "Probable cause 'is not a high bar.'"  *District of Columbia v. Wesby*, ___ U.S. ___, ___, 138 S.Ct. 577, 586 (2018) (quoting *Kaley v. United States,* 571 U.S. ____, ____, 134 S.Ct. 1090, 1103 (2014)).  As the Sixth Circuit recently opined:

> Probable cause exists if the facts, circumstances, and "reasonably trustworthy information" would allow a person "of reasonable caution" to believe that a crime has been committed. *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). This is "a practical, nontechnical conception," *ibid.*, and it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243–44 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

*United States v. Neuhard*, 770 F. App'x 251, 253 (6th Cir.), *cert. denied*, 140 S. Ct. 570 (2019).

In determining whether a search warrant is supported by probable cause, a court may consider only the "four corners of the affidavit."  *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009); *United States v. Ruffin*, 979 F.3d 528, 531–32 (6th Cir. 2020).  Thus, "information known to the officer but not conveyed to the magistrate is irrelevant."  *United States v.*

*Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (quoting *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010)).

Probable cause requires a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also Ruffin*, 979 F.3d at 531. Thus, "the affidavit supporting the search warrant must demonstrate a nexus between the evidence sought and the place to be searched." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)).

In determining whether this nexus exists, courts have concluded that "in the case of drug dealers, evidence is likely to be found where the dealer lives." *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998). In those cases, however, "the search warrant affidavit contained observable evidence of defendant's drug activity in addition to the affiant's experience with drug investigation." *United States v. Fitzgerald*, 754 F. App'x 351, 361 (6th Cir. 2018); *see United States v. Goward*, 188 F. App'x 355 (6th Cir. 2006) (probable cause established where affidavit also detailed controlled drug buys from defendants and other drug transactions); *United States v. Blair*, 214 F.3d 690 (6th Cir. 2000) (probable cause existed where officers executing financial records warrant observed drug trafficking materials in plain view and then applied for narcotics warrant). Sixth Circuit precedent does "not support the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home." *Fitzgerald*, 754 F. App'x at 361 (quoting *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005) (cleaned up).

In *Fitzgerald*, the affidavit included: (1) a tapped phone conversation in which Fitzgerald told a co-defendant he had left an item (believed to be a "burner phone") at the house; and (2)

officers' observations of Fitzgerald leaving his workplace at FedEx to enter his personal vehicle, drive to several locations, enter and exit those locations quickly, and drive back to his residence. Although police officers described this as Fitzgerald returning to his residence after "a suspected drug drop," the Sixth Circuit found the affidavit insufficient to satisfy the nexus requirement for probable cause to search Fitzgerald's residence.  *Id.* at 361.

In the case at bar, the nexus between Torbert's alleged drug activity and the Kipling Avenue address is similarly tenuous.  The affidavit contains a conclusory sentence that a "confidential and reliable informant" "was able to provide detailed information about TORBERT and his narcotics trafficking operation," and the "CI has provided information to law enforcement in the past which was proven true and accurate through independent investigation." (Doc. 42-1 at PageID 145.)  Law enforcement officers saw Torbert enter and exit the apartment building and meet briefly with someone by a car, and Torbert possessed one gram of fentanyl during a traffic stop approximately thirty-five minutes after leaving the Kipling Avenue address. (*Id.*)  This evidence, standing alone, does not establish probable cause to support the search of the Kipling Avenue address.  The affidavit contains no indication that the CI linked Torbert's alleged drug trafficking to his residence.  In addition, the only fact in the affidavit linking Torbert to illegal drugs was his possession of fentanyl miles away from Kipling Avenue after Torbert and two others were in a known drug trafficking area half an hour after leaving his residence. Quite simply, the affidavit underlying the search warrant lacks the required nexus between Torbert's alleged drug trafficking and the Kipling Avenue address and, therefore, fails to establish probable cause.

## IV.    GOOD FAITH EXCEPTION TO THE EXCLUSIONARY RULE

A much closer question, however, is whether the evidence discovered at the Kipling Avenue address must be suppressed.  Generally, evidence obtained in violation of the Fourth Amendment cannot be used in criminally prosecuting the victim of the illegal search and seizure. *Illinois v. Krull*, 480 U.S. 340, 347 (1987).  In 1984, however, the Supreme Court "established a new objective inquiry limiting suppression to circumstances in which the benefits of police deterrence outweigh the heavy costs of excluding 'inherently trustworthy tangible evidence' from the jury's consideration."  *United States v. Gilbert*, 952 F.3d 759, 763 (6th Cir. 2020) (quoting *United States v. Leon*, 468 U.S. 897, 907 (1984)).

Pursuant to this good faith exception, evidence "obtained in objectively reasonable reliance" on a "subsequently invalidated search warrant" need not be suppressed where an officer acts in good faith reliance on the warrant.  *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016) (quoting *Leon*, 468 U.S. at 922).  The Supreme Court, in *Leon*, identified four situations in which an officer's reliance cannot be considered "objectively reasonable:"  (1) when the warrant is issued on the basis of an affidavit that an affiant knows—or is reckless in not knowing—contains false information; (2) when the issuing magistrate abandons his or her neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.  *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 914–23).  Thus, if one of these situations applies, the evidence must be suppressed even if officers executing the warrant believed it to be valid.

In the case at bar, officers searching the Kipling Avenue address relied in good faith on the judicially-approved warrant. However, Torbert contends that the officers' reliance on the warrant was not "objectively reasonable" because the affiant knew the affidavit contained false information and because the affidavit obviously lacked indicia of probable cause. Having determined above that the warrant was not based on information the affiant knew or recklessly failed to know was false, the Court must now decide "whether the affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Ward*, 967 F.3d 550, 554 (6th Cir. 2020) (quoting *Leon*, 468 U.S. at 923).

Affidavits "so lacking in indicia of probable cause" are commonly called "bare bones" affidavits. *Id.* (quoting *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017)). "To elude the 'bare bones' label, the affidavit must state more than 'suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge' and make '*some* connection' between the illegal activity and the place to be searched." *Id.* (quoting *United States v. Christian*, 925 F.3d 305, 312–13 (6th Cir. 2019) (en banc)) (emphasis in original). The Court must "read the affidavit holistically and examine the totality of the circumstances in making this inquiry." *Id.*

"We must take care not to confuse a bare bones affidavit with one that merely lacks probable cause." *United States v. Gilbert*, 952 F.3d 759, 763 (6th Cir. 2020). As the Sixth Circuit recently explained:

> There must be daylight between the "bare bones" and "substantial basis" standards if *Leon*'s good-faith exception is to strike the desired balance between safeguarding Fourth Amendment rights and facilitating the criminal justice system's truth-seeking function. *See Leon*, 468 U.S. at 906–07, 913–21, 104 S.Ct. 3405; *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc). Thus, "[a]n affidavit cannot be labeled 'bare bones' simply because it lacks the requisite facts and inferences to sustain the

12

> magistrate's probable-cause finding; rather, it must be *so* lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, *no* reasonable officer would rely on it." *White*, 874 F.3d at 497.

*Id.* at 763 (emphasis in original).

The objective reasonableness determination "inquires 'whether a reasonably well trained officer would have known that the search was illegal despite the [judge's] decision'" to the contrary. *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008) (quoting *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003)). "[R]easonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable." *United States v. Merriweather*, 728 F. App'x 498, 505 (6th Cir. 2018) (quoting *White*, 874 F.3d at 500.

In this case, a CI linked Torbert to drug trafficking, and police confirmed that Torbert frequented the Kipling Avenue address. Officers observed via pole camera an incident on March 10, 2019 they believed to be a drug deal where Torbert exited the residence, met with a person at his car near the residence, and then immediately reentered the residence. Torbert possessed fentanyl during a traffic stop only three days after the suspected drug deal in front of the Kipling Avenue residence. This affidavit contains enough factual support that a reasonably well trained officer "would not know to disregard a judicial determination that probable cause existed." *Gilbert*, 952 F.3d at 761. Accordingly, the good faith exception applies, and the evidence will not be suppressed.

## V.    POST-HEARING BRIEFS

On February 8, 2021, Torbert's counsel filed a Post *Franks*-Hearing Brief on Good Faith Analysis Only (Doc. 53). Although Torbert's requests to file post-hearing briefs were both

denied, the Court considered Torbert's brief anyway. The good faith exception application in this case presented a close question, and the Court sought to fully contemplate Torbert's position.

## VI. CONCLUSION

For the reasons set forth above, Defendant Oscar Torbert's Motion to Suppress Fruits of Search Warrant and Amended Motion to Suppress Fruits of Search Warrant (Docs. 40, 47) are **DENIED**.

**IT IS SO ORDERED**.

Dated: March 1, 2021

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court